UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIFTH THIRD BANK,

    Plaintiff,

v.            Civil Case No. 14-11937
              Honorable Linda V. Parker

RICHARD C. MERTZ, JR.,
JAMES E. GRIMES, and
GM SPORTS LLC,

    Defendants.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT MERTZ

  Plaintiff Fifth Third Bank ("Fifth Third") initiated this lawsuit against Defendants on May 15, 2014, seeking to recover more than $3.5 million allegedly due under various loan agreements.  Fifth Third asserts the following counts in its Complaint: (I) Breach of GM Sports Line of Credit Note by Defendant GM Sports LLC ("GM Sports"); (II) Breach of GM Sports Guaranty by Defendant Richard C. Mertz, Jr. ("Mertz"); (III) Breach of Restated Mertz Note by Mertz; (IV) Breach of Apollo Guaranty by Mertz; (V) Breach of Restated Note by Defendant James E. Grimes ("Grimes"); and (VI) Breach of Apollo Guaranty by Grimes.  On January 13, 2015, Fifth Third filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure against all Defendants.

Defendants filed a response to Fifth Third's motion on February 6, 2015. (ECF No. 25.)  Fifth Third filed a reply brief on February 23, 2015.  (ECF No. 27.) Finding the facts and legal arguments sufficiently presented in the parties' pleadings, the Court dispensed with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f) on April 14, 2015.

Fifth Third and Grimes subsequently reached a settlement agreement, pursuant to which Fifth Third's claims against Grimes were dismissed with prejudice.  (ECF No. 30.)  On April 24, 2015, a notice was filed in this case, indicating that Mertz had filed a bankruptcy petition in the United States Bankruptcy Court for the Eastern District of Michigan, resulting in an automatic stay of these proceedings.  (ECF No. 31.)  On May 20, 2015, this Court entered an Opinion and Order granting Fifth Third's motion as to GM Sports.  (ECF No. 34.) When the bankruptcy court entered an order granting Fifth Third relief from the automatic stay on May 28, 2015, Fifth Third filed a notice renewing its motion for summary judgment against Mertz.[1]  (ECF No. 36.)  For the reasons that follow, the Court now grants Fifth Third's motion for summary judgment as to Mertz.

---

[1] The bankruptcy proceedings were dismissed on June 3, 2015.  (ECF No. 38, Exs. B, C.)

2

## I.      Factual Background

It is essentially undisputed in this litigation that Fifth Third negotiated various loan agreements with GM Sports and Mertz over the years which are now in default.

On July 26, 2007, Fifth Third and GM Sports entered into a Business Loan and Security Agreement ("GM Sports Loan Agreement").  Under the GM Sports Loan Agreement, Fifth Third extended a line of credit to GM Sports, as evidenced by, among other instruments, the Amended and Restated Line of Credit Note dated December 1, 2006, as amended by the First Amendment to Amended Restated Line of Credit Note dated November 1, 2007 (collectively "GM Sports Line of Credit Note").  (Pl.'s Mot., Ex. A ¶ 2.)  The GM Sports Line of Credit Note matured on November 1, 2008, but GM Sports failed to pay Fifth Third the amounts due and owing.

On February 4, 2009, Fifth Third and GM Sports entered into a Forbearance Agreement in connection with GM Sports' obligations to Fifth Third, including the GM Sports Line of Credit Note.  On March 25, 2010, Fifth Third, GM Sports, Mertz, and Grimes entered into an Amended and Restated Forbearance Agreement in connection with GM Sports' obligations to Fifth Third, including the GM Sports Line of Credit Note.  (*Id*. ¶ 3.)  This agreement was amended eight times.  (*Id*.)  Grimes, acting as GM Sports' corporate representative, admitted at his deposition

in this matter that GM Sports signed these various loan agreements (hereafter collectively "GM Sports Loan Documents").  (Pl.'s Mot., Ex. D at 9-10, 12-16.)

Pursuant to the terms of the GM Sports Line of Credit Note, Fifth Third could declare the unpaid balance immediately due and payable without notice to the debtor upon a default, as defined by the agreement.  (*Id.*, Ex. A.1 at 2.)  In the GM Sports Line of Credit Note, GM Sports agreed to pay Fifth Third's costs, expenses, and attorney's fees incurred in legal proceedings related to the GM Sports Loan Documents.  (*Id.* at 2-3.)

The GM Sports Line of Credit Note matured on April 18, 2014.  (Pl.'s Mot., Ex. A ¶ 6.)  GM Sports failed to pay the amounts due by that date, which constituted an event of default under the terms of the loan.  On April 21, 2014, Fifth Third sent GM Sports, via Federal Express, a Notice of Default and Demand for Payment.  (*Id.*, Ex. E.)  GM Sports has failed to pay off the GM Sports Line of Credit Note.  (*Id.*, Ex. A ¶¶ 6-7.)

According to Fifth Third, as of January 9, 2015, GM Sports owed the following amounts on the GM Sports Loan Documents: $135,345.19 in principal, $5,368.87 in interest, $19.50 per diem in interest every day after that date, plus Fifth Third's costs and attorney's fees.  (*Id.* ¶ 8.)  Defendants do not dispute Fifth Third's calculations as to the amounts owed under the loan agreements; however, they do contest Fifth Third's entitlement to default interest.  (Pl.'s Mot., Ex. D at

4

24-25; Ex. F at 24-25.)  They acknowledge, however, that the express terms of the loan documents grant Fifth Third the right to charge default interest.  (*Id*.)

On February 4, 2009, Mertz signed a Continuing Guaranty Agreement in favor of Fifth Third ("GM Sports Guaranty") in which Mertz guaranteed payments of all amounts due and owing under the GM Sports Loan Documents.  (Pl.'s Mot., Ex. A.3 at 1.)  In the GM Sports Guaranty, Mertz also agreed to pay Fifth Third's expenses and attorney's fees incurred in legal proceedings related to the GM Sports Guaranty.  (*Id*. at 4.)  At his deposition in this matter, Mertz admitted that he executed the GM Sports Guaranty.  (*Id*., Ex. F at 12.)

When the GM Sports Line of Credit Note matured on April 18, 2014, Fifth Third demanded payment from Mertz in accordance with the GM Sports Guaranty. Mertz has failed to pay the amounts due, although he admitted at his deposition that he is personally obligated to pay the amounts due under the GM Sports Loan Documents.  (Ex. A. ¶¶ 6-7; Ex. F at 25-26.)  Under the terms of the GM Sports Guaranty, Fifth Third is not obligated to exhaust its remedies against GM Sports before seeking the amounts due from Mertz as the guarantor.  (Pl.'s Mot. Ex. A.3 at 2.)

In the meantime, in 2006, Fifth Third extended two lines of credit to Mertz, each evidenced by separate promissory notes (collectively "Original Mertz Line of Credit Notes").  On March 25, 2010, Fifth Third and Mertz entered into an

Amended and Restated Forbearance Agreement in connection with Mertz's obligations to Fifth Third, which included the Original Mertz Line of Credit Notes, which was amended eight times ("Mertz Forbearance Agreement, as amended"). Pursuant to the fourth amendment, Fifth Third and Mertz entered into an Amended and Restated Note ("Restated Mertz Note") to replace and supersede the Original Mertz Line of Credit Notes.  At his deposition in this matter, Mertz admitted that these various loan agreements exist and that he signed them.  (Pl.'s Mot., Ex. F at 33-34.)

The Restated Mertz Note and Mertz Forbearance Agreement, as amended (collectively "Mertz Loan Documents") provide that the failure to pay the obligations due to Fifth Third by April 18, 2014 constitutes an event of default. (Pl.'s Mot. Ex. 1.4 at 2; Ex. A.5 at 2.)  In the event of a default, Fifth Third, at its option and without notice to Mertz, could declare the entire unpaid balance immediately due and payable.  (*Id*.)  Mertz also agreed to pay Fifth Third's costs, expenses, and attorney's fees incurred in legal proceedings related to the Mertz Loan Documents.  (Pl.'s Mot., Ex. A.4 at 6.)

The Restated Mertz Note Matured on April 18, 2014.  (*Id*., Ex. A ¶ 13.) Mertz failed to pay the amounts due.  (*Id*. ¶¶ 13-14.)  On April 21, 2014, Fifth Third sent Mertz, via Federal Express, a Notice of Default and Demand for Payment.  (Pl.'s Mot., Ex. G.)  Mertz has failed to pay the amounts due and owing.

6

(*Id*. ¶ 13; Ex F at 35, 48.)  Fifth Third claims that the amounts owed as of January 8, 2015 are $933,943.25 in principal, $42,625.09 in interest, $160.52 per diem in interest every day thereafter, plus Fifth Third's costs and attorney's fees.  (Pl.'s Mot., Ex. A ¶ 15.)

Fifth Third also extended credit and other financial accommodations to other businesses with which Mertz and Grimes are associated: Apollo Plating, Inc., Britework Properties, LLC, and Britework Properties II, LLC (collectively "Apollo Borrowers"), as evidenced by certain promissory notes executed in favor of Fifth Third ("Apollo Indebtedness").  (*Id*. ¶ 16.)  On June 30, 2008, Mertz executed a Fourth Restated and Amended Limited Guaranty Agreement ("Mertz Apollo Guaranty").  (*Id*. ¶ 17; Ex. F at 31.)  The Mertz Apollo Guaranty provides that "[Mertz] unconditionally and irrevocably guarantees to [Fifth Third] the full and prompt payment when due of all indebtedness, liabilities and obligations of the [Apollo Borrowers] to [Fifth Third]" up to $1,050,000.  (Pl.'s Mot., Ex. A.6 at 1, 6; Ex. A ¶ 17.)  It also grants Fifth Third immediate recourse against Mertz whenever the Apollo Indebtedness has not been paid when due (whether by acceleration or otherwise).  (*Id*., Ex. A.6 at 1.)

As of the date that Fifth Third filed its summary judgment motion, the Apollo Borrowers had paid only a portion of the Apollo Indebtedness, such that as of January 9, 2015, the remaining principal due was $11,613,690.49.  (Ex. A ¶ 18.)

7

As of January 9, 2015, Fifth Third had credited Mertz $850,000 on the $1,050,000 Mertz Apollo Guaranty based on the following: (1) $500,000 for an out-of-formula cash injection; (2) $75,000 for an escrow deposit per the original forbearance agreement (Pl.'s Mot., Ex. A.7 at 17); (3) $210,000 for the sale/refinancing of certain property on April 28, 2009; and (4) $65,000 for the April 28, 2009 repayment of a GM Sports note which is not at issue in this litigation.  (*Id.*, Ex. A ¶ 19.)  The amount Mertz owes under the Mertz Apollo Guaranty therefore is $200,000.  (*Id.* ¶ 20.)

## II.    Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323.  Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor.  *See Liberty Lobby*, 477 U.S. at 255.

## III.    Applicable Law & Analysis

Under Michigan law, a breach of contract claim (which all of Fifth Third's claims are) requires proof of: (1) the existence of a contract between the parties, (2) the terms of the contract, (3) that the defendants breached the contract, and (4) that

the breach caused the injury. *Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d

815 (6th Cir. 1999). Michigan courts define a guaranty as

> an enforceable undertaking or promise by one person collateral to a
> primary or principal obligation of another which binds the person
> making the promise to performance of the primary obligation in the
> event of nonperformance. The secondary party thus becomes
> primarily responsible for performance.

*Angelo Iafrate Co. v. M & K Dev. Co.*, 264 N.W.2d 45, 48 (Mich. App. 1978).

Under Michigan law, the relationship between the parties to a guaranty is

contractual in nature. *First Nat'l Bank v. Redford Chevrolet Co.*, 258 N.W. 221,

223 (Mich. 1935); *see also Comerica Bank v. Cohen*, 805 N.W.2d 544, 548 (Mich.

Ct. App. 2010). Fifth Third has established the elements of its breach of contract

claims.

In their response to Fifth Third's motion, Defendants assert four arguments

in defense of Fifth Third's claims. First, Defendants contend that Fifth Third

engaged in "misrepresentations and bad acts" which caused Defendants to incur

hundreds of thousands of dollars in additional monetary liability. As examples,

Defendants refer to the following: (1) Fifth Third's "allow[ance of] an

unannounced unilateral overdraw of the line of credit tied to Apollo Plating's

accounts receivable"; (2) Fifth Third's alleged misrepresentation that $1 million of

a Michigan Economic Development Corporation Bond transaction for Apollo

Plating could be used for the initial supply of plating for machines, when it in fact

could not; and (3) Fifth Third's creation of a commodities hedge department and its "forc[ing] the Defendants to enter into a Nickel Hedge Agreement . . .." (Defs.' Resp. at 4-6.)

Defendants next argue that they "are not liable for the consequences of [Fifth Third's] reckless spending sprees." (*Id*. at 6.) Specifically, Defendants contend that Fifth Third, rather than mitigating its damages, made "unreasonable and nonsensical decisions pertaining to Defendants' businesses [that] have cost these businesses hundreds of thousands of dollars." (*Id*.) Defendants are referring to Fifth Third's demands that Apollo hire third party consultants, Grant Thornton, Sitko, and DWA Consultants. (*Id*. at 6-9.)

Defendants next argue that they have made significant payments that have not been credited toward the balance Fifth Third claims is due and owing. (*Id*. at 10.) Defendants allege that Mertz paid more than $2 million to Fifth Third in the process of trying to reorganize Apollo, made cash infusions in excess of $9.5 million "to sustain the business and growth capital", contributed money in relation to an MH Property mortgage and the Michigan Economic Development Corporation Bond, and deposited $450,000 into escrow to cover occasional overdrafts. (*Id*.)

Finally, Defendants argue that the forbearance agreements are unenforceable because the bank, according to Mertz and Grimes, forwarded only the signature

11

pages of "multiple forbearance agreements" to Defendants.  (*Id*. at 11, citing Ex. 2 at 16; Ex. 5 at 17.)  In their response brief, Defendants do not identify which specific agreements were signed without Mertz or Grimes receiving anything but the signature pages.  (*See id*.)  At his deposition, Grimes could specifically recall only that he separately received the signature pages with respect to the seventh and eighth amendments.[2]  (Defs.' Resp., Ex. 5 at 18-19.)

Turning first to Defendants' last argument, although Defendants claim that Mertz and Grimes received only signature pages for at least two forbearance agreement amendments without the rest of the documents, Grimes and Mertz testified that they subsequently received the complete documents for all amendments and they could not recall or articulate any issues that they had with the contents or terms of the amendments.  (Pl.'s Mot., Ex. D at 17-19; Ex. F at 16-18; Ex. H at 73-74.)  Moreover, Defendants were represented by counsel in connection with the last amendments to the forbearance agreements, who did receive the complete amendments prior to execution of those amendments.  (Pl.'s Reply, Ex. L.)  Thus Defendants cannot show, as a matter of law, that there was no mutuality of assent with respect to those agreements.

---

[2] At his deposition, Mertz continuously referred to the loan documents related to an entity that is not part of this lawsuit, Howard Finishing.  (*See* Pl.'s Mot., Ex. F at 17-19.)

Those agreements contained release provisions pursuant to which Defendants released and waived all claims and defenses they had against Fifth Third, in exchange for Fifth Third's forbearance on its right to collect on their defaulted obligations.  Those release clauses-- essentially duplicative of the following clause contained in the eighth amendment to the GM Sports Amended and Restated Forbearance Agreement-- cover the claims raised in Defendants' arguments:

> Release.  As further consideration for Lender entering into this Eighth Amendment, each Obligor, in all capacities, and on behalf of its current and former employees, agents, executors, successors, and assigns, releases Lender, each Lender Affiliate, and their respective current and former officers, directors, employees, agents, attorneys, affiliates, subsidiaries, successors, and assigns from any liability, right, or Claim and Cause of Action that exists now or arises later, whether known or unknown, foreseen or unforeseen, that arises from or is in any way related to facts existing on the date of this Agreement or related directly or indirectly to any event, act, or omission occurring on or before the date of this Agreement.  This includes claims related to (1) actions taken, not taken, or allowed to be taken by Lender or any Lender Affiliate under the GM Sports Loan Documents; (2) Obligors' relationship with Lender and Lender Affiliates; (3) any oral agreements; and (4) any banking relationships that Obligors have or had with lender or any Lender Affiliate. "Claims and Causes of Action" means any and all past, present or future claims, causes of action, theories of recovery, lawsuits, demands, obligations, debts, accounts, bills, workers compensation benefits, medical services and expenses, attorneys' fees and expenses, covenants, contracts, agreements, promises, verdicts, judgments, executions, attachments, garnishments, liens, rights, damages, costs, losses of services, expenses and compensation of any nature whatsoever, whether direct or derivative.  This release is a material and essential term of this Agreement and is to be construed as broadly as possible in favor of Lender and Lender Affiliates.

13

(Pl.'s Mot., Ex. A.2 at Pg ID 342-43 (bold removed); *see also, e.g., id*. Ex. A.2 at Pg ID 283, 291, 298; Ex. A.4 [Mertz Amended and Restated Forbearance Agreement, as amended] at Pg ID 363, 413.)  Moreover, in the eighth amendments to each of the Amended and Restated Forbearance Agreements, Defendants acknowledged that Fifth Third's "actions have been reasonable and appropriate under the circumstances and are within its rights under the [applicable] Loan Documents and applicable law."  (*See, e.g.*, Ex. A.2 at Pg ID 339; Ex. A.4 at Pg ID 410; Ex. A.8 at Pg ID 521.)

In any event, Defendants' assertion that Fifth Third engaged in "bad acts" is not a defense to Fifth Third's breach of contract claims.  Defendants fail to identify any contractual provision relieving them of liability based on the purported misconduct.  Defendants do not assert that Fifth Third's use of third party consultants violated the agreements at issue.  Nor do they argue that Fifth Third negligently performed the contracts at issue.  Defendants also do not establish that Fifth Third owed them a duty that is separate and distinct from their contractual obligations.[3]

Finally, Defendants are not entitled to, or have already received credit for, the payments identified in their response brief.  Defendants claim that Fifth Third

---

[3] Notably, Defendants have never asserted a claim of negligence against Fifth Third based on its alleged misfeasance in guiding or trying to save Defendants' businesses.

should credit Mertz for millions of dollars he paid to reorganize Apollo and "to sustain the business and growth capital"; however, they cite to no contractual provision entitling Mertz to a reduction of his other debt obligations for these payments.

In short, Fifth Third establishes Mertz's contractual liability, including for the amount sought, under the loan documents at issue. Fifth Third shall file documentation in support of any attorney's fees and costs sought from Mertz pursuant to the terms of the loan documents within fourteen (14) days of the date of this Opinion and Order. At the same time, Fifth Third should submit a proposed Judgment setting forth the precise amounts then due and owing. Mertz may file a response to Fifth Third's request and proposed judgment within seven (7) days of Fifth Third filing its submissions.

Accordingly,

**IT IS ORDERED**, that Plaintiff Fifth Third Bank's motion for summary judgment against Defendant Richard C. Mertz Jr. is **GRANTED**.

> s/ Linda V. Parker
> LINDA V. PARKER
> U.S. DISTRICT JUDGE

Dated: July 7, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, July 7, 2015, by electronic and/or U.S.

First Class mail.

s/ Richard Loury
Case Manager